## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **DARRYL D. GALLOW, ET AL** | **CIVIL DOCKET NO. 6:23-CV-00007** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendants, Bridgestone Americas Tire Operations, LLC f/k/a Bridgestone/Firestone North American Tire, LLC (hereinafter, "BATO"), and Bridgestone Americas, Inc. f/k/a Bridgestone/Firestone Americas Holding, Inc. (hereinafter, "BASM") (collectively, "Defendants"). [Doc. 57]. An Opposition was filed by Darryl and Darbara Gallow (hereinafter, "Plaintiffs") [Doc. 61], to which Defendants filed a Reply [Doc. 64]. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

### FACTUAL AND PROCEDURAL BACKGROUND

At the time of the accident, Darryl Gallow (hereinafter, "Gallow") worked as a mechanic for Turner's Downtown Conoco & Auto Services (hereinafter, "Turner's"). [Doc. 57-4, p. 3]. On October 18, 2021, Hubert "Carl" Henry, an operator for Hundley's Brothers' Farm, drove a tractor trailer to Eunice to collect a load of grain. [Doc. 57-4, p. 3]; [Doc. 61-2, p. 5]. The tractor trailer was equipped with a Firestone FD691, size 11R24.5 tire manufactured by BATO at its LaVergne, Tennessee, plant during the 48th week of 2018 (hereinafter, the "Tire"). [Doc. 57-1, ¶ 4]; [Doc. 61-1, ¶ 4]. After

arriving in Eunice, Mr. Henry noticed that the Tire was flat. [Doc. 61-2, p. 9]. Mr. Henry called his supervisor at Hundley's, who then contacted Turner's for a tire repair. *Id.* at pp. 4-5.

Gallow was dispatched by Turner's to 312 Tunnie Lane, Eunice, LA 70535, to repair and reinstall the Tire on the tractor trailer. *Id.*; [Doc. 1-1, p. 2]. Gallow was accompanied by Spencer LeBlanc, the owner of Turner's. *See* [Doc. 61-3]. Upon arrival, Gallow removed the Tire and performed an inspection, finding that there was a nail in the Tire. *Id.* at pp. 4-5. Gallow proceeded to remove the nail, patch the hole, and began inflating the Tire using the compressor and hose attached to his service truck. *Id.* at p. 6, 9. After inflating the Tire, Gallow checked its air pressure with his pocket air gauge. *Id.* at p. 10. Determining that more air was required, Gallow removed the air gauge and was about to reattach the air hose when the Tire exploded. *Id.* The explosion caused the Tire to shoot off into the air, striking Gallow in the head. [Doc. 61-2, p. 13].

Plaintiffs initiated this action in the 15th Judicial District Court, Acadia Parish, on October 12, 2022. Gallow asserts claims under the Louisiana Products Liability Act, La. R.S. § 9:2800.51, *et seq.*, ("LPLA"). [Doc. 1-1]. As a result of the accident, Plaintiffs allege that Gallow suffered severe mental and physical injuries, such as a spinal cord contusion at C3-C7; quadriplegia; severe degenerative spinal canal stenosis at C3-C6; multiple facial fractures; a subdural hemorrhage; and neurogenic bladder. *Id.* at p. 5. Additionally, Darbara Gallow asserts the following claims: (i) loss of consortium, (ii) loss of society, companionship, love and affection,

and (iii) loss of services. *Id.* at pp. 5-6. Defendants removed the case on January 3, 2023, pursuant to this Court's diversity jurisdiction. 28 U.S.C. § 1332. [Doc. 1]. Defendant's Motion is now ripe for ruling.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson, Inc.,* 477 U.S. at 248.

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019), *citing Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences,

Page **3** of **11**

unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017), *quoting Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## LAW AND ANALYSIS

Under Louisiana law, the LPLA establishes the "exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. § 9:2800.53. "To recover under the [LPLA], a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product, (2) that the claimant's damage was proximately caused by a characteristic of the product, (3) that this characteristic made the product unreasonably dangerous, and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Daigrepont v. Exxon Mobil Corp.*, 340 So. 3d 1018 (La. App. 1st Cir. 2021), *amended on reh'g*, (La. App. 1st Cir. 2022), *writ denied sub nom.*, 347 So. 3d 151 (La. 2022). A product can be unreasonably dangerous in one of four ways: (i) construction or composition (commonly referred to as a "manufacturing defect"), (ii) design, (iii)

inadequate warning, or (iv) nonconformity with an express warranty. La. R.S. § 9:2800.55-9:2800.58.

Here, Plaintiffs do not contest that BASM is an improper party to this action and that summary judgment dismissal is appropriate. [Doc. 57-2, p. 8]; [Doc. 61, p. 8]. The parties also agree that Plaintiffs' design defect, inadequate warning, breach of express warranty, and independent negligence claims should be dismissed as a matter of law based on the evidence in the record.[1] [Doc. 57-2, pp. 11, 25]; [Doc. 61, pp. 9, 19]. The focus of the Court's inquiry, then, is on whether there is a genuine dispute of material fact as to the second and third elements of Plaintiffs' manufacturing defect claim against BATO: (i) whether the Tire had a manufacturing defect, and (ii) whether the defect was the proximate cause of Plaintiffs' injuries.[2]

---

[1] In support of their argument that BASM is an improper party to the action, Defendant provided an Affidavit of Kerry S. Cantrell, the Assistant Secretary of BSAM. Cantrell testified that "BSAM is not engaged in the design, manufacture, distribution or sale of tires. BSAM is not an agent for the design, manufacture, testing, distribution or sale of tires, including commercial truck tires, of any entity, including BATO." [Doc. 57-5, p. 2].

In support of their arguments to dismiss Plaintiffs' design defect, inadequate warning, and breach of express warranty claims, Defendants cited to testimony from Plaintiffs' experts. [Doc. 57-3, *Deposition of Mr. Sherman*, pp. 10, 31] ("Q: In your reports of this case you offer the opinion that the [T]ire is not defective in design. Is that true? A: That is correct. … Q: Are you offering any warnings opinions? A: No, sir."); [Doc. 57-6, *Deposition of Incavo*, pp. 12, 15] ("Q: [A]re you offering an opinion in this case that there's a design defect in the [T]ire? A: I said no. … Q: Are you offering any warnings opinions in this case? A: No.").

[2] The Court notes that neither party presented arguments on the fourth element: "that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Daigrepont*, 340 So. 3d 1018. As such, this element is not a basis for Defendants' Motion and will not be considered in this ruling.

## I. Existence of a Defect

Under the LPLA, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. § 9:2800.55. This claim "provides a remedy for damages caused by a product that is defective due to a mistake in the manufacturing process." *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

Defendants contend that their experts, Mr. Queiser and Mr. Grant, present sufficient evidence that the Tire did not have a manufacturing defect, whereas Plaintiffs "have not produced any competent, scientifically reliable evidence" to support such a claim.[3] [Doc. 57-2, pp. 12-25]. In response, Plaintiffs contend that Defendants' attack on Plaintiffs' experts must be viewed as a credibility determination, rather than a *Daubert* challenge, because Defendants did not timely file a *Daubert* challenge to Plaintiffs' experts and did not base their Motion on Federal Rule of Evidence 702. [Doc. 61, pp. 10-17]. Moreover, they contend that the testimony of their experts, Mr. Sherman and Dr. Incavo, establish that the Tire was unreasonably dangerous and had a manufacturing defect. [Doc. 61, pp. 17-18]. In reply, Defendants insist that the real issue is Plaintiffs' lack of competent evidence to establish a prima case under the LPLA, not credibility. [Doc. 62-2, pp. 2-3].

---

[3] Defendants also argue that "the fact that an accident occurred does not prove the tire defect." [Doc. 57-2, pp. 9-10]. The Court need not address this argument because Plaintiffs do not rely on the existence of the accident in proving the Tire was defective.

As a preliminary matter, the Court addresses Defendants' arguments about the methodology, reliability, and qualifications of Plaintiffs' experts, which appear to be *Daubert* challenges in substance.[4] Because the deadline to file *Daubert* motions in the Court's Scheduling Order was January 24, 2024, [Doc. 23, p. 2], such a challenge at this juncture has not been timely raised. While the Court will not analyze an improperly raised *Daubert* challenge, it does highlight that Mr. Sherman and Dr. Incavo both appear to have extensive experience in the field and present detailed opinions in their reports. *See* [Doc. 61-4, *Report and CV of Mr. Sherman*]; [Doc. 61-5, *Report and CV of Dr. Incavo*]. Even though Defendants successfully expose weaknesses in the reasoning of Plaintiffs' experts, these instances speak to determinations of credibility, which is an issue properly reserved for the jury.[5] Accordingly, the Court will not strike these experts at this time and will consider their testimony in its analysis.[6]

---

[4] Defendants acknowledge as much in their Motion: "Though not the basis of this particular motion, Federal Rule of Evidence 702, as amended requires … [discussion of the requirements of Federal Rule of Evidence 702] … As shown herein, neither Sherman's nor Incavo's proffered opinions meet such criteria." [Doc. 57-2, p. 23].

[5] *See Costly v. Nissan Motor Co., Ltd,* 2016 WL 4870246, at *3 (M.D. La. Sept. 13, 2016) ("Defendants are not entitled to summary judgment because the expert testimony on the record contains disputed facts, analysis, and contradictory conclusions. … The credibility and weight assigned to each expert's testimony is a function of the jury and is not appropriate on summary judgment.").

[6] The Court reserves judgment on whether and to what extent the parties' experts will be permitted to give expert testimony at trial. *Malbrough v. State Farm Fire & Cas. Co.*, 1996 WL 565819, at *3 (E.D. La. Sept. 27, 1996) (reserving judgment on Federal Rule of Civil Procedure 702 until trial).

In support of their Motion, Defendants present testimony from both of their experts that the Tire did not have a manufacturing defect. To start, Mr. Queiser opined in his report that the Tire was: (i) manufactured in accordance with safety standards from the Department of Transportation, industry custom, and BATO policy, and (ii) "not defective or unreasonably dangerous in design or manufacture." [Doc. 57-4, p. 22]. Likewise, Mr. Grant concluded that the Tire "was not in a defective condition or unreasonably dangerous at the time it left [the manufacturer's] control" and the "design and manufacture are consistent with those generally used in the tire industry at the time it was manufactured." [Doc. 57-7, pp. 10-11].

However, Plaintiffs controvert this evidence with testimony from their experts that the Tire did have a manufacturing defect. Mr. Sherman's report found that there was foreign material in the body ply cords of the Tire. [Doc. 61-4, p. 23]. This condition, according to Mr. Sherman, constitutes a "controllable manufacturing defect" that the manufacturer failed to identify during its inspection process.[7] *Id.* at p. 21. Likewise, Dr. Incavo's report concludes that the Tire suffered a manufacturing defect because it possessed a plycoat compound of poor quality. [Doc. 61-5, p. 13]. Dr. Incavo also stated that it was possible that the presence of foreign material contributed to the Tire's defective nature. *Id.* at p. 9.

The record thus presents a "battle of the experts," with Plaintiffs' and Defendants' experts setting forth contradictory testimony. "In a battle of competing experts, it is the sole obligation of the jury to determine the credibility of the

---

[7] In his report, Mr. Sherman defines a manufacturing defect as "[a]ny variation in the manufacturing process or non-uniformity condition[.]" [Doc. 61-4, p. 11].

Page **8** of **11**

witnesses and to weigh their testimony, not the obligation of this Court." *Joseph v. Doe*, 2021 WL 8086575, at *6 (E.D. La. June 7, 2021). *See also Anderson*, *supra*, 477 U.S. 242 ("Credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Accordingly, the Court denies summary judgment on this element of Plaintiffs' manufacturing defect claim.

## II. Proximate Cause

"Before liability may be imposed, under the LPLA, a plaintiff must show proximate causation — a link between the actions of a manufacturer and the injury-causing product." *Brandner v. Abbott Lab'ys, Inc.,* 2012 WL 195540, at *4 (E.D. La. Jan. 23, 2012)*, quoting Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997). Expert testimony is required in a products liability action to prove causation unless "the product itself, or at least the ... feature in question [is] relatively uncomplicated, and the implications ... such that a layman could readily grasp them." *Stewart v. Cap. Safety USA*, 867 F.3d 517, 520-21 (5th Cir. 2017). Like above, the parties' arguments on this element are centered upon contradictory expert testimony. [Doc. 57-2, p. 12]; [Doc. 61, pp. 10-16].

To begin, the Court notes that the nature of this action and the complexity of the product's manufacturing process likely renders expert testimony mandatory to prove causation. *See Stewart,* 867 F.3d at 520-21. Turning to the evidence submitted to the Court, Defendants' expert, Mr. Queiser, opines that the Tire experienced a zipper rupture caused by "deflected operation" resulting from the puncture. *Id*. at pp.

24, 27-28. And Mr. Queiser argues that the Tire was improperly repaired by Gallow. *Id*. at p. 29. Similarly, Mr. Grant asserts that a zipper rupture caused the Tire to explode because of "service conditions and abuses that changed its condition substantially after it left [the manufacturer]." [Doc. 57-7, p. 11]. In addition, Mr. Grant submits that if Gallow had been properly trained in procedures and safety precautions, "the likelihood of the zipper rupture occurring and the subsequent injury to Gallow during the servicing of the Tire would not have occurred." *Id*. at p. 14.

Again, Plaintiffs rebut Defendants' summary judgment evidence with the reports and testimony of their experts. Mr. Sherman opines in his report that the Tire "[f]ailed due to a manufacturing defect," and "[h]ad the [Tire] been manufactured properly, without a foreign material defect in the sidewall of the [Tire], the zipper failure would not have occurred[] in this case and Gallow would not have been injured." [Doc. 61-4, p. 22]. Dr. Incavo's report also speaks to causation, concluding that "[t]he poor plycoat bonding to steel plies and poor adhesion to adjacent components caused structural weakness in the defective [T]ire which significantly contributed to the failure that occurred once the ply was put under tension during re-inflation." [Doc. 61-5, p. 13].

Following the same reasoning as above, the Court denies Defendants' Motion for summary judgment on the proximate cause element because credibility determinations are properly reserved for the jury. *Joseph, supra*, 2021 WL 8086575. *Anderson, supra*, 477 U.S. 242.

## CONCLUSION

For the foregoing reasons, the Court finds that there are genuine disputes of material fact that preclude summary judgment as a matter of law for Plaintiffs' LPLA construction or composition defect claim against BATO. Fed. R. Civ. P. 56.

Accordingly,

IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 57] is DENIED as to Plaintiffs' LPLA claim for a construction or composition defect against BATO.

IT IS FURTHER ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT is GRANTED as to Plaintiffs' claims against BASM and the remainder of Plaintiffs' claims against BATO. These claims are therefore DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 7th day of March 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE